<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| ROBERT O'BRIEN, | Civil Action No. 14-6889 (JLL) |
| --- | --- |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Robert O'Brien ("Plaintiff") from the final determination by Administrative Law Judge ("ALJ") Elias Feuer upholding the final decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties, and for the following reasons, the final decision of the Commissioner is **affirmed**.

I.   BACKGROUND

   A.   <u>Procedural History</u>

On May 19, 2011, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act and an application for supplemental security income under Title XVI of the Social Security Act. (R. at 193-99.) Both applications were denied on October 14, 2011. (R. at 102-07.) Plaintiff's request for reconsideration was denied on February 9, 2012.

1

(R. at 110-15.) Subsequently, a request for hearing was filed on April 5, 2012. (R. at 119-20.) A hearing was held before ALJ Elias Feuer on March 7, 2013. (R. at 17-47.) On March 27, 2013, ALJ Feuer issued a decision finding that Plaintiff was not disabled. (R. at 48-60.) On May 31, 2013, Plaintiff requested an extension of time to submit a brief in support of an appeal of the ALJ's decision. (R. at 14-16.) On June 12, 2013, Plaintiff's request for more time was granted. (R. at 7-8.) On October 3, 2014, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner. (R. at 1-3.) Plaintiff then commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and/or 1383(c).

    B.    <u>Factual History</u>

        1. <u>Plaintiff's Testimony</u>

At the time of his hearing, Plaintiff was fifty-six years old. (R. at 24.) He maintained employment in various livery positions such as a cab driver, a forklift driver, a store laborer, and a warehouse worker until 2009. (R. at 19-23.) His position as a material handler required operating a forklift and manually lifting merchandise weighing up to 50 pounds. (R. at 20-21.) Within the last 15 years Plaintiff had a job driving a dry-cleaning delivery van and was required to lift up to 40 pounds at a time. (R. at 40-41.) Plaintiff stopped working during the years 2003 and 2004 to tend to his girlfriend at the time. (R. at 21.) Subsequently, he worked in a warehouse operating a forklift and lifting merchandise weighing up to a maximum of 20 pounds. (R. at 22.) Plaintiff was then employed as a taxi driver until October 2010. (R. at 22-23.)  He stopped working because he became homeless due to his alcoholism and moved in with his brother. (R. at 23.) Plaintiff did not collect unemployment or apply for New Jersey Workers' Compensation at that time. (R. at 25.)

    Plaintiff testified that he looked for employment in warehouse work and fast-food

restaurants after he stopped working as a taxi driver, but was refused employment without reason. (R. at 25-26.) Plaintiff testified that he followed up with a few places and that if he was offered an opportunity to work, he would have accepted. (R. at 27-28.) He stated that he stopped looking for work in 2011 because of constant rejection. He alleges that it was around this time that his family encouraged him to file the application for Disability Benefits. (R. at 29.)

Plaintiff indicates that he has difficulty walking due to susceptibility of falling. (R. at 30.) He stated that he is currently taking Pristiq and Lamictal to treat his depression, and Hydrochlorothiazide, Metoprolol, Enalapril, and Amaldopine to treat his high blood pressure. (R. at 30-31.) Plaintiff alleges that Dr. Moore noted a connection between his organic brain syndrome and his many years of alcohol abuse as well as the possibility that the syndrome may be the result of mini-strokes (R. at 32-33.) Plaintiff alleges that his ability to work is impaired because he can no longer walk without losing balance or stand for longer than half-an-hour without extreme discomfort. (R. at 34-35.)  He also alleges that he experiences a "little dizziness" when moving his head while he is sitting or when walking. (R. at 37.)

### 2. Medical Evidence

A CT scan of the brain dated March 21, 2011 indicates a lacunar infarct in the pons and a large lacunar infarct in the right basal ganglion, a tiny lacunar infarct in the left basal ganglion and a second one in the genu of the left internal capsule, as well as small lacunar infarcts in both centrum semiovales. There was no evidence of skull fracture, acute mastoiditis or sinusitis, nor any evidence of intracerebral or subdural hematomas or subarachnoid hemorrhage. (R. at 279.) The CT scan results of March 29, 2012 reveal an old infarct in the caudate nucleus, with no evidence of acute intracranial hemorrhage or midline shift. (R. at 359-60.) An electroencephalogram test conducted on April 11, 2012, indicated an abnormality consistent with

a possible structural lesion in the right temporal area of the brain. (R. at 362.)

On June 21, 2012, an MRI of the Plaintiff's right hip showed no evidence of acute bone marrow edema, bone bruise, destructive change or fracture and revealed normal alignment. The impression was mild-to-moderate right hip osteoarthrosis. (R. at 453.)

Beginning in February 2011, Plaintiff visited the Paterson Community Health Center. On the Residual Functional Capacity Questionnaire dated August 11, 2011, Dr. Moore noted Plaintiff's memory loss, short attention span, inability to concentrate, and compromised gait. She indicated that Plaintiff's experience of pain frequently interferes with attention and concentration needed to perform simple work tasks. (R. at 282-85.) On October 3, 2011, November 22, 2011, and January 3, 2012, by way of checkmarks suggesting normalcy or the absence of crosses representing lack of abnormality, Dr. Moore indicated that she did not observe any abnormalities in Plaintiff's neurological deficits or gait. (R. at 363, 365, 367.)

Plaintiff indicated to Dr. Miskin that he enrolled in Options Counseling Center in March 2011 and attended the program five days a week. (R. at 323.) In Dr. Miskin's September 6, 2011 report, he noted that there was no overt evidence of a thought disorder. Plaintiff had the ability to recall what he ate for breakfast that morning, as well as what he had for dinner the night prior. Dr. Miskin opined that Plaintiff is able to follow and understand simple instructions, perform many simple tasks independently, and that he is able to maintain attention and concentration. (R. at 324.)

Throughout various sessions of treatment with Dr. Hooper of Paterson Community Health Center, Inc., Dr. Hooper described Plaintiff as calm, cheerful, oriented, responsive, and cooperative. While on a few occasions Plaintiff's mood was angry or sad, his thought content was consistently normal and he appeared fully oriented for every visit. (R. at 457-68.) Using the

Current Mental Status form's terms to describe Plaintiff's current mental status, Dr. Hooper indicated that Plaintiff's attention, concentration, and speech flow were normal, his thought organization logical, and thought content appropriate to the circumstances. She did not note any abnormalities in Plaintiff's posture or gait. (R. at 470.)

Plaintiff also sought treatment from Dr. Dicovskiy in 2012 in connection with his depression. (R. at 369-72.) He testified that he used to feel sad and weepy on a daily basis but the medicine that Dr. Dicovskiy prescribed him to treat his depression has alleviated these symptoms. (R. at 38-39.)

### 3. Vocational Expert Testimony

The ALJ asked vocational expert Jackie Wilson to consider whether a hypothetical individual "with the claimant's age, education, and experience, limited to only occasionally climbing ramps, stairs, ladders, or scaffolds, and occasional balance, and to avoid unprotected heights and moving mechanical parts" could perform Plaintiff's past relevant work. Ms. Wilson testified that the occupation of a taxi driver would still be appropriate and the individual would be able to perform such duties. (R. at 42.) Plaintiff's representative asked Ms. Wilson whether this hypothetical individual could perform Plaintiff's prior work "if every time the individual, while either sitting or standing, would be off task if they had to move their head from side-to-side due to dizziness…33% of the time." The 33% figure was a rough estimate of the amount of time that the individual would be off task. Ms. Wilson responded that such limitation would preclude work. (R. at 43-44.)

The ALJ then asked Ms. Wilson to consider whether the hypothetical individual further limited "to standing or walking for four hours a day and sitting four hours a day" would be able to perform Plaintiff's past work. Ms. Wilson testified that the occupation of a taxi driver would

5

still be appropriate. The ALJ posed a further limitation to the hypothetical individual to "six hours sitting and two hours standing." Ms. Wilson stated that such an individual could still perform the duties of Plaintiff's past occupation as a taxi driver. (R. at 42-43.) When asked by the ALJ if the hypothetical individual with the limitation of six hours sitting and two hours standing would be able to perform other jobs in the general and national economy, Ms. Wilson testified in the affirmative. She stated that such an individual would be able to work as a final assembler, an ampoule sealer, as well as at sedentary jobs. (R. at 44-45.)

## II.    STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs., 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered substantial. For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).) The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. Monsour Med. Ctr. V. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (citing Hunter Douglas, Inc. v. Nat'l Labor Relations Bd., 804 F.2d 808, 812 (3d Cir. 1986).) "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984).) A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).) In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" Id. (citing Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988).) A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986).) If the ALJ fails to properly indicate why evidence was discredited or rejected, the Court is not permitted to determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec, 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).)

### III. APPLICABLE LAW

#### A. The Five-Step Process for Evaluating Whether a Claimant Has a Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b and demonstrates that he is disabled based on an "inability to engage in any

7

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

     To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. 20 C.F.R. § 416.920. The claimant bears the burden of establishing the first two requirements. The claimant must establish that he (1) has not engaged in "substantial gainful activity" and (2) is afflicted with "a severe medically determinable physical or mental impairment." 20 C.F.R. §404.1520(a)-(c).  If a claimant fails to demonstrate either of these two requirements, DIBs are denied and the inquiry ends. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1. If the claimant demonstrates that his impairment meets or equals one of the listed impairments, he is presumed to be disabled and therefore, automatically entitled to DIBs. Id. If he cannot make the required demonstration, further examination is required.

     The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits him to resume his previous employment. 20 C.F.R. §416.920(e). If a claimant is able to return to his previous employment, he is not disabled within the meaning of the Act and is not entitled to DIBs. Id. If the claimant is unable to return to his previous employment, the

analysis proceeds to step five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 416.920(g). If the Commissioner cannot satisfy this burden, the claimant is entitled to DIBs. Yuckert, 482 U.S. at 146 n.5.

  B. The Requirement of Objective Evidence

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [Commissioner] may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record: "The adjudicator must evaluate the intensity, persistence, and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities." SSR 96-7p, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. Id. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical

9

signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b). See also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

The list of "acceptable medical sources to establish whether [a claimant] has a medically determinable impairment" includes licensed physicians, but does not include nurses. 20 C.F.R. § 404.1513(a). Though the ALJ "may also use evidence from other sources to show the severity of [a claimant's] impairments," this evidence is "entitled to consideration as additional evidence" and does not need to be given the same weight as evidence from acceptable medical sources. 20 C.F.R § 404.1513(d)(1). Hatton v. Comm'r of Soc. Sec., 131 Fed. Appx. 877, 878 (3d Cir. 2005). Factors to consider in determining how to weigh evidence from medical sources include (1) the examining relationship, (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment, (3) the supportability of the opinion, (4) its consistency with the record as a whole, and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

## IV.  DISCUSSION

Plaintiff argues that the ALJ erred at step two by improperly finding that his medical conditions were not severe and by failing to properly weigh Dr. Moore's opinion. (Pl. Br. at 12, 20.) He asserts that he has severe impairments including difficulty walking, standing, and concentrating. O'Brien contends that such impairments are substantiated by the abnormal MRI and CT brain scan results. (Pl. Br. at 15.) He argues that the ALJ should not have considered medical notes which referred to the Plaintiff's status as stable. (Pl. Br. at 16.) He also challenges the ALJ's finding that Plaintiff's medical conditions do not significantly limit his ability to perform daily activities. (Pl. Br. at 18.) Finally, Plaintiff argues that Dr. Moore's opinion was improperly rejected and that her opinion was not inconsistent with the medical record. (Pl. Br. at

20-21.)

A. <u>Substantial evidence supports the ALJ's finding that Plaintiff's high blood pressure was not severe.</u>

Plaintiff states that the ALJ erred in finding that his impairments were not severe. (Pl. Br. at 12.) However, he does not make any arguments suggesting that his high blood pressure was severe. An impairment is severe if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are "the abilities and aptitudes necessary for performing most jobs," including physical functions, capacities for seeing, hearing, speaking, and following instructions, use of judgment, interacting appropriately with co-workers, and dealing with change. 20 C.F.R. § 404.1521(b). The ALJ found that Plaintiff's symptoms of hypertension were due to his noncompliance with his medication and once he began taking his prescribed medication, his blood pressure readings were normal. (R. at 55.) Plaintiff testified that he is now compliant with prescribed medications. Plaintiff did not state that he is currently experiencing any residual effects of this condition. (R. at 32.) Based on his testimony and its medical support, the ALJ determined that because he no longer experiences symptoms of high blood pressure and because "there is no evidence of end damage or any other residuals secondary to uncontrolled blood pressure," Plaintiff did not establish that his high blood pressure was severe. (R. at 55-56.) The Court finds that the ALJ's determination that Plaintiff's high blood pressure was not a severe impairment during the relevant time period is based on substantial evidence in the record.

B. <u>There is substantial evidence supporting the ALJ's finding that Plaintiff's organic brain syndrome was not severe enough to significantly limit his ability to perform basic work-related activities.</u>

Plaintiff argues that the ALJ erred in finding that his organic brain syndrome was not severe. (R. at 16.) However, there is no indication in Plaintiff's medical records that his dizziness or

11

difficulty with concentration affected his ability to perform any work activities. While the CT scan of Plaintiff's brain indicates several lacunar infarcts, Dr. Moore's medical reports do not address any physical or psychological limitations as a result of this. (R. at 56, 279, 363-67.) Plaintiff argues that the ALJ improperly relied on Dr. Moore's note indicating that Plaintiff's organic brain syndrome was stable. (Pl. Br. at 16.) However, the medical record clearly showed that Plaintiff's condition was benign. (Def. Br. at 8.) Furthermore, Plaintiff's testimony directly contradicts the supposition that his organic brain syndrome severely impairs his ability to work. (Def. Br. at 9-10.) Despite his complaints of imbalance and vulnerability to falling, Plaintiff quit his job because he became homeless due to his alcohol dependence, not as a result of any difficulty with performing his job duties. (R. at 23.) Subsequently, he sought out employment as a taxi driver, as a forklift operator, and at fast food restaurants. He followed up with a few of the places to inquire into whether there were any available positions. O'Brien testified that if he had been offered a job, he would have taken it. He stated that he felt he was able to perform the duties of the jobs he applied to. (R. at 25-28.) Plaintiff further stated that he stopped looking for work because he was discouraged after not having received any job offers, not because he was physically or psychologically unable to work. (R. at 29.) He also testified that if he could have his driver's license reinstated, and if he was offered the opportunity to work as a taxi driver, he "would like to give it a try." (R. at 36.) Plaintiff has the burden of proving a severe impairment, and he failed to do so. The Court finds that the ALJ's determination that Plaintiff's organic brain syndrome was not a severe impairment is based on substantial evidence in the record.

C.  There is substantial evidence supporting the ALJ's evaluation of Dr. Moore's opinion.

First, O'Brien argues that the ALJ rejected Dr. Moore's opinions without articulating "good reasons" in the decision. 20 C.F.R. § 416.927(c)(2).  The Court finds that ALJ did not

improperly reject Dr. Moore's opinion. He adequately explained in his decision his reasons for granting no weight to her opinion, indicating that he did so because her opinions are inconsistent with the findings of Dr. Miskin and Dr. Dicovskiy, with Plaintiff's fully functional activities of living, and with his observations of Plaintiff at the hearing. (R. at 57.)

Plaintiff also argues that the ALJ neglected to weigh the medical opinions in three of Dr. Moore's four reports and thus engaged in "sit and squirm" jurisprudence. (Pl. Br. at 20-25.) The Court finds that the ALJ appropriately evaluated the medical record, Plaintiff's own testimony, and his observations of Plaintiff in the hearing. The ALJ's consideration of Plaintiff's behavior during the 45 minute hearing as one of many factors does not amount to "sit and squirm" jurisprudence. Therefore, the Court finds that although the ALJ explicitly weighed only one of Dr. Moore's four reports, Dr. Moore's opinion was inconsistent with the rest of the record and there is substantial evidence in the record to support the ALJ's decision to give little weight to her opinion.

      1. <u>Dr. Miskin's and Dr. Dicovskiy's opinions were appropriately given more weight than Dr. Moore's opinion because they were consistent with the record as a whole.</u>

Dr. Miskin and Dr. Dicovskiy's opinions are consistent with Plaintiff's medical records. The ALJ found that Dr. Miskin's opinion was based on his evaluation of Plaintiff rather than Plaintiff's subjective complaints. (R. at 57.) In his September 2011 report, Dr. Miskin noted that Plaintiff was able to maintain concentration and exhibited no overt evidence of a thought disorder. (R. at 324.) Although Dr. Dicovskiy's reports are for the most part illegible, they are consistent with Dr. Miskin's findings as well as with the March 2011 CT Brain Scan which showed no evidence of any cognitive limitations. (R. at 369-72, 279.) Dr. Miskin's report indicates that Plaintiff "has no history of psychiatric hospitalization." (R. at 323.) He notes that Plaintiff is capable of going to the Options rehabilitation program five days a week and getting

takeout food or preparing microwaveable food. Dr. Miskin also indicates that Plaintiff exhibited satisfactory levels of concentration and attention. (R. at 323-24.) Consistent with Dr. Miskin's opinion, Dr. Dicovskiy's report makes no mention of any psychiatric history which posed any limitations. (R. at 370.)

Contrary to the opinions of Dr. Miskin and Dr. Dicovskiy, Dr. Moore indicates that Plaintiff's experience of pain frequently interferes with attention and concentration needed to perform simple work tasks. (R. at 283.) Further, Dr. Moore's report is inconsistent with the CT scan which did not show any cognitive limitations or decreased brain functioning resulting from the multiple lunar infarcts. (R. at 57, 279.) "The degree to which [a medical source] provides supporting explanations for their opinions" affects the weight the ALJ will give to a medical source's opinion. 20 C.F.R. § 404.1527(c)(3). Dr. Moore based her opinion on Plaintiff's subjective complaints. (R. at 282-85.) The ALJ found that, although Plaintiff has been diagnosed with organic brain syndrome, his "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely credible." (R. at 55.)  Without objective medical evidence, complaints alone are insufficient to establish a severe impairment. 20 C.F.R. § 404.1508. Accordingly, the Court finds that there was substantial evidence in the record to support the ALJ's finding that Dr. Moore did not provide any supporting explanation for her opinion.

Dr. Moore's report is also in stark contrast from Plaintiff's testimony about his functional activities of daily living and the ALJ's observations of Plaintiff at the 45 minute hearing. Dr. Moore noted that Plaintiff's pain was severe enough to frequently interfere with attention and concentration needed to perform simple work tasks. (R. at 283.) However, on the Function Report, Plaintiff reported that his daily activities included attending the Options

14

rehabilitation program five days a week and preparing his breakfast, and he noted that he had no problem with personal care. (R. at 239-46.) Dr. Miskin reported that O'Brien conveyed to him that he is able to live by himself in an apartment, order take out, and prepare food. Plaintiff's chief complaints to Dr. Miskin were only of alcohol dependence and abuse. (R. at 323.) Plaintiff also testified that he actively applied for employment in 2011 and he would have taken a job if he was offered one. (R. at 25-28.) Despite Dr. Moore's opinion that Plaintiff had difficulty concentration and attention, Plaintiff was concentrated and answered of the ALJ's questions in a clear and concise manner. (R. at 283, 57.)

This Court cannot substitute its conclusions for those of the fact-finder. It is within the ALJ's discretion to weigh the medical evidence. The Court concludes that due to these inconsistencies, in addition to the factors under 20 C.F.R. § 404.1527(c), it was appropriate for the ALJ to give no weight to Dr. Moore's August 22, 2011 report; substantial evidence supports his decision to give consistent, supportable opinions more weight and an inconsistent opinion less weight.

2. <u>Since the ALJ found Dr. Moore's opinion inconsistent with the rest of the record, it was not necessary for the ALJ to explicitly weigh Dr. Moore's April 15, 2011, November 22, 2011, and February 2012 reports.</u>

Plaintiff argues that because the ALJ did not explicitly set forth the weight given to three of Dr. Moore's four reports, the ALJ's determination that Plaintiff is not disabled is erroneous. (Pl. Br. at 21-22.) However, in the ALJ's finding that Dr. Moore's "assessment is unsupported," he cited to Dr. Moore's April 15, 2011 and November 22, 2011 reports (R. at 57, 299-300, 301-02.) Whether it was improper for the ALJ to decide not to explicitly weigh Dr. Moore's other three reports is not dispositive. The ALJ gave no weight to Dr. Moore's August 22, 2011 report because it was based on Plaintiff's subjective complaints and is inconsistent with the rest of the record. Dr. Moore's other three reports are similar to her August 22, 2011 report. The ALJ's

15

finding that Plaintiff was not severely impaired was based on the medical opinions of Drs. Miskin and Dicovskiy and Plaintiff's own statements regarding his functional activities, and merely reinforced by the ALJ's observation of Plaintiff in the hearing. The ALJ did not engage in "sit and squirm" jurisprudence as Plaintiff argues. (Pl. Br. at 25.) The Court holds that had the ALJ explicitly referred to Dr. Moore's other three reports, the result would have been the same. Accordingly, the Court finds there was substantial evidence in the record to support the ALJ's conclusion that it was not necessary to explicitly weigh all four of Dr. Moore's reports, as Dr. Moore's opinion is inconsistent with the record.

D. <u>Because none of Plaintiff's impairments were severe, the ALJ correctly did not proceed to step three of the disability analysis.</u>

The ALJ only proceeds to step three if the claimant has a severe medically-determinable impairment or combination of impairments. Because there was substantial evidence to support the ALJ's determination that none of Plaintiff's impairments constituted a severe medically-determinable impairment, the Court finds the ALJ properly did not proceed to step three.

Accordingly, this Court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence in the record. As such, the final decision of the Commissioner is affirmed.

V.   **CONCLUSION**

For the foregoing reasons, the decisions of the Commissioner and the ALJ are **affirmed**. An appropriate order follows this Opinion.

DATED:  July 1, 2015.

s/ Jose L. Linares_____  
JOSE L. LINARES  
U.S. DISTRICT JUDGE